No. ——

First Circuit

——

WHITE  v.  EDGERLY  PETROLEUM COMPANY

——

(December 22, 1925, Opinion and Decree)

——

.(*Syllabus by the Editor.*)

1. **Louisiana Digest—Waters—Par. 10.**

An oil company which negligently permits salt water to flow from where it was operating an oil well into the drains, thus killing the rice on an adjoining plantation, is negligent and must pay the damages done to the owner of the rice field.

(Civil Code, Art. 2315.  Editor's note.)

2. **Louisiana Digest—Appeal—Par. 626.**

The finding of the trial court as to the credibility of the witnesses, being clearly correct, is affirmed.

Appeal from Calcasieu Parish. Hon. Thomas F. Porter, Judge.

Suit by William S. White against Edgerly Petroleum Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

M. R. Stewart, of Lake Charles, attorney for plaintiff, appellee.

McCoy & Moss, of Lake Charles, attorneys for defendant, appellant.

MOUTON, J. In 1922 plaintiff planted a rice crop on a 42-acre tract of land adjoining Bayou Choupique in Calcasieu parish. He pumped water from the bayou to irrigate his rice field. Most of his rice died in the month of July, 1922. He claims that the loss of his crop, with the exception of 124 sacks, was caused by salt water which defendant company negligently permitted to flow from where it was operating an oil well into drains which emptied into Bayou Choupique.

It is shown that the rice of the plaintiff was killed by the salt water which had been permitted to mingle with the fresh water of the bayou. This fact is well established by the evidence. About the 20th of July plaintiff found salt water on his rice, had it tested, and soon after stopped his pumps. There are three ditches by which salt water could have entered the bayou. Plaintiff made an investigation of these ditches to locate the source of the trouble. In two of the ditches there was no trace of salt water. In the other, however, the Robicheaux ditch, he found strong salt water with traces of oil. He walked along this ditch to where it connects with the oil field of defendant company. He says the ditch ceased to run at about a mile and a half from the bayou, but the water in it was salty, and showed traces of oil. Caruthers, who is shown to have been a salt water inspector for several years, says he saw salt water at the Choupique Bayou bridge, about the 19th or 20th of June, which was the time

plaintiff discovered that his crop was being injured by salt water. He tasted the water in a ditch at that point and found it was very salty. He says the ditch "goes into the Robicheaux ditch". He notified plaintiff of what he had found. Jasper Stine, manager of the Houston Canal Company, also testified in the case. He says the Robicheaux ditch had salt water in it frequently.

It is therefore well shown that plaintiff's rice was killed by salt water; that the Robicheaux ditch, which was a connecting drain between Choupique Bayou and defendant's oil field, had salt water in it with traces of oil at the time plaintiff's crop was destroyed, and that the salt water could not have entered the bayou so as to affect plaintiff's crop through any other ditch or channel. On the 25th of August, plaintiff found a bleeder on a reservoir in defendant's oil field which was down, and from which salt water was pouring into a drain that connected with the Robicheaux ditch. The district judge said that plaintiff, after making a sincere effort to find and stop the source of the contamination of his water supply, found this "bleeder" on the earthen oil tank of the defendant "down" and salt water flowing from it into a ditch which led to Choupique Bayou. Plaintiff says he found salt water in this ditch not far from where it connects with Choupique Bayou. In this statement he is corroborated by the testimony of Caruthers, and Stine, the manager of the Houston Canal Company. These witnesses, as far as this record discloses, were disinterested, and we cannot see why it should not be accepted as a fact that the Robicheaux ditch had salt water in it at a long distance from where this "bleeder" was located. It also appears that there was no other channel from which this

salt water could have reached the bayou. Speaking of the salt water that had contaminated the bayou water, and of the "bleeder" from which it flowed into the ditch, the district judge said: "Since no other probable source of contamination is pointed out, fixes upon the defendant, with reasonable certainty, the responsibility for such contamination". As the record is barren of any proof showing any other source of contamination, we do not see how it is possible to reach a conclusion different from the one arrived at by the trial judge, notwithstanding all the facts and circumstances referred to by counsel for defendant in opposition thereto.

Counsel for defendant say that defendant became the victim of plaintiff's quest for evidence which prompted him to turn the bleeder down to allow the wanton flow of the salt water from defendant's separating tank. Such an inference as that cannot possibly account for the presence of salt water in the Robicheaux ditch, which was seen there first by Caruthers, who notified plaintiff thereof in July, long prior to the turning down of the bleeder, which had also been seen there by Stine, the other witness. It is impossible to believe that plaintiff had engaged in such a performance for over a month prior to the 25th of August, when he reported to the sheriff and others that the salt water was pouring from the bleeder into a drain that led through the Robicheaux ditch to Choupique Bayou. The evidence is clear that the salt water could not have gotten into the bayou from any other source than from the Robicheaux ditch, as before stated. There is no proof that it could have entered into this ditch except through this bleeder. The lower court was therefore correct in finding that this was the only source of contamination,

no other having been pointed out. Under such a state of facts it cannot be said that the court has fallen into an error in not accepting the theory of plaintiff, to the effect that plaintiff had turned down this bleeder for the purpose of manufacturing evidence and victimizing defendant company. The court below had reasonable grounds to believe plaintiff as a witness, and we cannot, as an appellate court, repudiate his testimony and conclude that he is unworthy of belief.

We find that the lower court has properly held defendant liable in damages, which counsel for plaintiff claims should be increased. The amount allowed is, under the evidence, grounded on a just and fair estimate. The increase asked for is refused.