## GREER v. PELICAN NATURAL GAS CO., Inc.
### No. 5056.

Court of Appeal of Louisiana. Second Circuit.

Oct. 10, 1935.

*Rehearing denied Nov. 6, 1935.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Olin D. Moore, of Many, for appellee.

TALIAFERRO, Judge.

Plaintiff is the owner of the N. W. ¼ of N. W. ¼, section 32, township 8 north, range 11 west, in Sabine parish. He paid $5 per acre for it in 1919. It is traversed by Bilbray branch, a small shallow drain, which enters the tract near the northwest corner and makes its exit therefrom near the southeast corner.

Defendant drilled three producing oil wells on the S. W. ¼ of S. W. ¼, section 29, and two such wells on the N. E. ¼ of N. E. ¼, section 31, adjoining plaintiff's land. This suit was instituted to recover damages alleged to have resulted from waste oil and salt water from defendant's storage tanks near the wells, running down the branch and its tributaries, and polluting the water therein, overflowing and injuring the land adjacent thereto and killing and injuring timber growing thereon. The specific elements of damage and injury plaintiff claims to have sustained from the unlawful and negligent allowance of said oil and salt water to run over his land and down the branch, are as follows:

Timber destroyed, value.........$ 200.00
Depreciation in value of land... 500.00
Removal of his stock from the
    pasture on the land and pro-
    viding them with wholesome
    water....................... 300.00
                           ——————
Total........................$1000.00

Defendant's answer is a general and specific denial of liability for the damages, if any, sustained by plaintiff from the causes alleged by him.

From a judgment for plaintiff for $700 defendant appeals. No increase in the judgment is prayed for here.

█ The right of plaintiff to recover for any injury to his property resulting from the waste oil and salt water escaping from defendant's wells or tanks is not seriously questioned. Such right is well established by law. 40 Corpus Juris, 1188, 1205. The nature and extent of such injury and the damages flowing therefrom are questions of fact concerning which we are confronted with a maze of contradictory testimony consisting of nearly 400 typewritten pages. Time forbids any elaborate effort on our part here to attempt complete analysis or reconciliation thereof. No good purpose would be subserved by doing so. We have studied the record carefully.

█ Plaintiff used his land entirely as a pasture for his stock, consisting of three mules and less than a dozen cattle. No part of it was in cultivation during the year 1934. Bilbray branch, we are convinced from the testimony, is what is referred to as an intermittent stream. During the summers, when rains were not frequent, it would cease to flow and, therefore, during said periods, did not contain water. It is also established that salt water from defendant's tanks did run down the branch for several months, beginning in May, 1934, and that a considerable quantity of inferior timber on each side of the branch, as a rule not more than ten feet therefrom, died. No oil of any consequence came down the branch. We are satisfied such oil or refuse matter as did run down this branch, or that was overflowed on plaintiff's land when the branch was flushed by heavy rainfall, caused no damage to land or timber. Salt water alone killed the timber. There are various estimates of the quantity of timber killed. It is confined to 3.4 acres of the land. This area embraces all the land covered by the branch's bed and that which is overflowed by it after heavy rains. No other portion of the 40-acre tract was affected by the oil or salt water. A witness for defendant made a careful count of the dead trees on the land and estimated the quantity of timber suitable for sawmill purposes. This testimony has all of the earmarks of sincerity and correctness, and we accept it as conclusive on the questions. It is as follows:

66 gum trees ranging in diameter from 4 inches to 14 inches.

38 willow trees ranging in diameter from 4 inches to 14 inches.

3 oak trees ranging in diameter from 4 to 7 inches.

5 ash trees ranging in diameter from 4 to 8 inches.

39 pine trees ranging in diameter from 4 inches to 17 inches.

2 ironwood trees, 6 inches in diameter.

2 beech trees, 6 inches in diameter.

He found only 1,267 board feet of merchantable timber. The pine was second growth, and the gum was young, being entirely sap. All of the timber was of a

very inferior grade and had small value for any purpose, save for farm uses. The lower court fixed the value of the timber at $200, the amount sued for. We are not disposed to disturb this valuation.

We do not think plaintiff has established that his land has been injured to any appreciable extent because of the salt water seeping a few feet back from the channel of the creek. He admits that the salt water was only some two feet wide and from one to two inches deep in the creek. When the creek overflowed its banks, no injury was caused the land because the salt content was too negligible to work such a result. The branch would soon run down after the rains and be confined to its channel. It is shown that the oil wells here discussed flow very small quantities of oil and that they would be abandoned within three months after this case was tried in January, 1935.

Plaintiff asserts that because of the pollution of the creek he was forced to go to considerable trouble and expense to secure fresh water for his stock, for four months. The lower court allowed $100 on this claim. The testimony does not definitely disclose that this branch would have provided fresh water for the stock during the four dry months of 1934. It is more than probable that during some part of this period the creek would have had water in it. We think an allowance of $50 on this account will amply compensate plaintiff.

Defendant contends, and there is testimony supporting the contention, that a portion of the salt water flowing into and down Bilbray creek came from oil wells on plaintiff's own land, operated by another oil company, and for this reason the injury done plaintiff's property cannot be chargeable entirely to defendant. Admitting defendant's contention as to the sources of the salt water as being well founded, it cannot escape liability to plaintiff. Its status would be, in such event, that of joint tort-feasor and therefore solidarily bound for the damages resulting from such relationship. Civ. Code, art. 2324; 62 Corpus Juris, p. 1128, par. 42; Cooper et al. v. Cappel et al., 29 La. Ann. 213; Jones v. Maestri, 170 La. 290, 127 So. 631; Gardiner v. Erskine et al., 170 La. 212, 127 So. 604.

Appellee urges us to remand the case to allow admission of certain testimony tendered by it and rejected by the lower court, at plaintiff's objection, bearing upon the value of the land claimed by plaintiff to have been injured, and of the timber killed by the salt water and waste oil. The testimony tendered and excluded was almost entirely cumulative. The record groans with an abundance of evidence of the same character. Its exclusion or admission should have no material bearing upon a decision of the issues involved.

For the reasons assigned, the judgment of the lower court is amended by reducing the amount thereof to $250, and as thus amended, it is affirmed, with costs.

Court of Appeal of Louisiana.
Second Circuit.

Oct. 10, 1935.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Olin D. Moore, of Many, for appellee.