### EAGEN v. TRI–STATE OIL CO. et al.
### No. 5710.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Rehearing Denied July 5, 1938.

Coleman & Morgan, of Shreveport, for appellants.

Isaac Abramson, of Shreveport, and Bert Bodenheimer, of Spring Hill, for appellee.

HAMITER, Judge.

In September of 1935, plaintiff acquired a surface lease on lots 9 and 10, Block 12 of the Townsite of Rodessa, Louisiana, and during January of 1936, erected several buildings thereon. A previously executed oil, gas and mineral lease affected the property. The building on the front portion of the lots was used as a drug store, grocery establishment and hotel, while those on the rear contained rooms and apartments that were rented out by plaintiff on a weekly basis.

During the early part of 1936, the defendants in this suit, Tri-State Oil Company, Inc., and R. J. Wolfe, obtained an oil, gas and mineral lease on Lot 6 of Block 12 of said Rodessa Townsite, and in March, 1936, began the drilling of a well thereon in search of oil. It was completed as a producer about June 28, 1936. This lot in 25 feet wide and 150 feet deep, and is separated from plaintiff's property, which is south thereof and parallel thereto, by two lots having a combined width of 50 feet.

Plaintiff alleges that defendants carelessly and negligently performed their drilling operations and permitted and caused water drainage and other wastes therefrom to flow onto her premises with considerable and serious damage to her property. The prayer of her petition is for judgment in the amount of $3,900. Among the items of damages listed are: Loss of revenue from inability to rent rooms, injuries to and deterioration of buildings and sanitary system, inconvenience, and suffering from ill health.

In denying liability to plaintiff, defendants urge the defenses that: (1) No damage resulted from their drilling operations, (2) parties other than defendants caused whatever injuries she complains of, (3) if damages were sustained, such are not compensable, (4) she is estopped to seek recovery, (5) alternatively, defendants merely contributed to the damage, along with other parties, and they cannot be held entirely responsible therefor.

After trial of the case but before its submission for adjudication, plaintiff caused a remittitur to be entered reducing her claim to the sum of $1,900.

The district court granted judgment in plaintiff's favor and against the defendants in solido for $999.63. The parties cast appealed suspensively. Answering the appeal plaintiff prays that the judgment be amended by increasing the amount awarded to $1,440, and as amended it be affirmed.

The first two above stated defenses involve questions of fact, and the evidence

material to them and offered by the respective litigants is conflicting in many important details. The witnesses for plaintiff tell of the overflowing and flooding of her premises, resulting in a dangerously unsanitary condition and deterioration of the property, and attribute this primarily to defendants' drilling operations. The defense witnesses, while admitting that water flowed on plaintiff's lots, state that the damage complained of was caused by the frequent overflowing of a nearby water tower belonging to the Rodessa Water Works Company and by mud and water that came from a slush pit located in close proximity to the premises and owned by the Danciger Oil Company, when its dam broke during the month of April, 1936.

A person testifying in the case, and one whose testimony must be given much weight in view of his being entirely disinterested and also because of his experience in sanitation problems, is Mr. L. M. Page, a sanitary inspector for the Caddo Parish Health Unit since August, 1927. Mr. Page was in Rodessa daily, except Saturdays and Sundays, while drilling was carried on there. On receiving numerous complaints relative to bad toilets and wash water running over the streets, he made an inspection of plaintiff's property. There he found the rear end of the lots inundated with water, which possessed some oil, to the floor level of the apartment house. When asked how long the condition endured, he stated: "The water was standing on the property at least 30 days, then off and on another 30 days. About 60 days had water there". He further stated that at that time there was no sewerage system in Rodessa and small privies with septic tanks were employed; and that the water overflowed the pits of those that were located behind plaintiff's premises, creating an odor and a dangerous condition from a sanitary standpoint and making the apartments undesirable for living purposes. Before the overflowing, he inspected the property and found it in a satisfactory condition. After the recession of the water, the ground was covered with all kinds of filth, and trucks were unable to gain entrance there to remove it.

Mr. Page was positive and emphatic that the conditions just described were caused by the drilling operations of defendants; and in this connection he stated that the dam of the Danciger Oil Company slush pit did not break until after the inundation was accomplished, that the water tower overflowed only once or twice during the period of time in question, and that neither the dam nor tower was responsible for the situation that existed.

Our careful study of all of the evidence in the case leads us to the conclusion of fact that serious damage was experienced by plaintiff and her property through its flooding, and that responsibility for this rests primarily on defendants. Although the record indicates that some water from the Danciger Oil Company's slush pits and from the tower of the Rodessa Water Works found its way to plaintiff's premises, we are convinced that this occurred subsequent to the time of the sustaining of the real damage. These findings, obviously, accord with those of the trial judge, in as much as he decreed recovery for plaintiff.

It is next contended by defendants that the damage, if caused by them, is not compensable. The argument is advanced that they had a legal right to develop their lease for oil, did not wilfully or intentionally injure plaintiff in the operation of her business, and that they used all known precautionary measures to afford protection to her. We feel sure that the injuries were not deliberately and purposely occasioned by defendants. However, we are equally as certain that the damage could have been avoided if proper efforts and means had been employed. It is only unavoidable disturbances to which neighbors must submit for the public good. Le Blanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226, 17 L.R.A.,N.S., 287. "When it is established that a person is creating a nuisance, the mere fact that he is doing what is reasonable from his point of view constitutes no defense". Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632, 633. Where a party installs or operates machinery and equipment with resultant injury to his neighbors' property, and the detriment could have been avoided, compensation for the damage incurred will be ordered. Germann v. 557 Tire Co., Inc., 167 La. 578, 120 So. 13. (Citing the Le Blanc and Orton Cases, supra).

Nor do we think that plaintiff is estopped from claiming damages, as defendants contend, by reason of the fact that she acquired her surface lease and constructed the buildings thereon knowing at the time that the lots in that vicinity would be drilled for oil or gas. Her lease con-

tract constituted and is recognized in the commercial world as an assignable property right, for which a valuable consideration was paid, and she was entitled to assume on making her purchase that those persons thereafter performing drilling operations on adjoining or nearby lands would use means and methods adequate for her protection. No pertinent law has been cited to us, and we know of none, which supports defendants' contention of estoppel. On the contrary, this court said in Greer v. Pelican Natural Gas Co., 163 So. 431, 432, that:

"The right of plaintiff to recover for any injury to his property resulting from the waste oil and salt water escaping from defendant's wells or tanks is not seriously questioned. Such right is well established by law. 40 Corpus Juris, 1188, 1205."

With reference to the last above stated defense, defendants' counsel state in their brief:

"As has been said heretofore, the District Court rendered judgment against the present defendants for all of the damages done by all parties on the theory that any one of several joint tort feasors is responsible for the whole damage. The Rodessa Water Works Company and the Danciger Oil & Gas Company were not made defendants to this suit. It is on the ruling by the Court holding the defendants responsible for all the damages that defendants complain most strenuously."

■ If it be conceded that the mentioned parties contributed, along with defendants, to plaintiff's injuries, under the existing jurisprudence of Louisiana all are considered as joint tort feasors and their liability is solidary.

Defendant in the case of Greer v. Pelican Natural Gas Co., supra, was charged with having permitted waste oil and salt water to flow from its oil well operations onto and damage plaintiff's lands. Among other things we said in our opinion:

"Defendant contends, and there is testimony supporting the contention, that a portion of the salt water flowing into and down Bilbray creek came from oil wells on plaintiff's own land, operated by another oil company, and for this reason the injury done plaintiff's property cannot be chargeable entirely to defendant. Admitting defendant's contention as to the sources of the salt water as being well founded, it cannot escape liability to plaintiff. Its

status would be, in such event, that of joint tort-feasor and therefore solidarily bound for the damages resulting from such relationship. Civ.Code, art. 2324; 62 Corpus Juris, p. 1128, par. 42; Cooper et al. v. Cappel et al., 29 La.Ann. 213; Jones v. Maestri, 170 La. 290, 127 So. 631; Gardiner v. Erskine et al., 170 La. 212, 127 So. 604."

■ The case of Williams et al. v. Pelican Natural Gas Co., 187 La. 462, 175 So. 28, is likewise pertinent. Our appreciation of the facts of that controversy is that the several defendants allowed salt water and waste oil to flow from their respective wells into a creek and thence onto plaintiffs' lands with resultant harm thereto. A judgment for damages was sought by the aggrieved parties. In the course of its opinion the Supreme Court had the following to say (page 34):

"The exception of nonjoinder filed by all of the defendants was properly overruled, since the evidence in the case clearly shows that all of the defendants jointly contributed to the injury done to the property of plaintiffs by permitting salt water and waste oil from all of their wells to flow into Williams creek and to find its way into the pond of plaintiffs, and to spread over the timber lands of plaintiffs.

"Defendants are necessarily joint tort-feasors, under this state of facts, and judgment for damages was properly rendered by the lower court against all of the defendants, in solido, in the present suit."

Accordingly, we hold that defendants herein are properly chargeable for the entire loss suffered by plaintiff.

■ All parties litigant complain of the quantum fixed by the trial judge. The defendants claim that it is excessive, while plaintiff asserts its inadequateness. The evidence is conclusive that plaintiff and her property were materially injured. The various buildings on the rear of the lots required considerable repair which was made necessary by the long standing water and waste, and much revenue was lost to plaintiff through her inability to find and keep tenants who could and would endure the obnoxious odors that enveloped her place of business. The amount awarded in the trial court seemingly does justice between the parties, and we shall not change it.

For the reasons above given, the judgment is affirmed with costs.