**FALGOUT v. YOUNGER et al.**
No. 2059.

Court of Appeal of Louisiana. First Circuit.

Dec. 20, 1939.

C. A. Blanchard, of Donaldsonville, and Julius Katz, of New Orleans, for appellant.

Harris Gagne and Ellender & Wright, all of Houma, for appellees.

OTT, Judge.

The plaintiff seeks to recover damages in the sum of $44,007.40 for injuries which he received in a truck accident on the morning of December 27, 1937, about 7 o'clock A. M. on the paved highway two or three miles north of Houma. The defendants are Robert J. Younger and the driver of his truck, Abbie Hebert; Clay Naquin, and the driver of his truck, Lewis Bourg, all of whom are sought to be held liable in solido, the drivers of the trucks on account of their joint and concurrent negligence, and the respective owners of the trucks because of the negligence of their respective employees while acting within the scope of their employment.

It is contended by the plaintiff that the driver of the Younger truck was guilty of negligence in stopping or parking the truck on the pavement without any lights or signals to warn traffic approaching from the rear; that the driver of the Naquin truck approaching from the rear and going in the same direction as the Younger truck was guilty of negligence in driving at an excessive rate of speed, without keeping a proper lookout and without having his truck under control.

Both of these trucks were going south toward Houma. The weather was misty and foggy and the road was slippery. Plaintiff, with two companions, was driving his truck north, in the opposite direction, and on his right side of the road. According to plaintiff and his witnesses the Younger truck had stopped on its right or the west side of the road, and as plaintiff approached from the opposite direction, and when he had gotten within fifteen or twenty feet of the parked Younger truck, the Naquin truck driven by Bourg and approaching the Younger truck from the rear, turned to its left in order to pass the stopped truck and got over in the traffic lane of plaintiff coming from the opposite direction. When the Naquin truck turned to its left, plaintiff turned his truck further to the right and onto the ·shoulder of the road and partly in the ditch on his side of the road, but the left front part of the Naquin truck struck plaintiff's truck near the center of the cab as the Naquin truck was pulled back to its right in order to get back into its traffic lane after passing the Younger truck. Plaintiff's left arm was so badly mangled that it had to be amputated shortly thereafter, and plaintiff sustained other injuries of a less serious nature.

▇ The defendants, Naquin and Bourg, made no appearance. Younger and Hebert filed exceptions of misjoinder of parties defendant and of no cause or right of action. These exceptions appear to have been referred to the merits, but no further action was taken on them. They are not urged on appeal, and we assume that they have been abandoned.

Younger and Hebert filed answer denying negligence on their part and specially denying that the truck driver, Hebert, was guilty of any negligence in parking or stopping the truck on the road, but they admit that Hebert was driving the truck in the course of his employment by Young-er. The case was tried on the merits as to Younger and Hebert and judgment was rendered rejecting plaintiff's demand as to them. The plaintiff has taken an appeal from the judgment which dismissed his suit as to these' two defendants.

▇ While the liability, vel non, of the other two defendants, Naquin and Bourg, is not an issue on the appeal, it is necessary to consider the negligence of Bourg in order to determine whether or not the driver of the Younger truck was guilty of negligence that contributed to the accident. And in this connection, we have no hesitancy in saying that Bourg was guilty of gross negligence in driving his truck at an excessive speed and in his failure to keep his truck under control as he came up from the rear of the Younger truck on this foggy and wet morning and attempted to pass this truck to his left directly in the path of the oncoming truck of the plaintiff. In fact, from the record it appears that Bourg was convicted of reckless driving on this occasion and his negligence may be taken as conceded.

Younger and the driver of his truck, Hebert, contend that the Younger truck did not come to a stop in front of the Naquin truck driven by Bourg and approaching from the rear, but that the driver of the Younger truck slowed down gradually and coasted or rolled along as the driver passed a pedestrian on the side of the road and asked her if she wanted to ride to Houma. These two defendants further claim that if the Younger truck did come to a complete stop it was only for a moment, and that this momentary stopping was not the proximate cause of the accident, but that the proximate cause of the accident was the excessive speed and reckless driving of the Naquin truck coming from the rear.

While the learned trial judge found that the Younger truck had come to a stop on the highway, yet he found that the truck was stopped for only a second or two when the Naquin truck attempted to pass it from the rear. We agree with the trial judge that the Younger truck had come to a complete stop, but we think that the evidence is overwhelmingly to the effect that the truck had stopped for an appreciable length of time—at least more than a second or two—when the Naquin truck attempted to pass from the rear and ran into plaintiff's truck coming from the opposite di-

rection. In fact, no less than five witnesses who had an opportunity of seeing this Younger truck testified that the truck was stopped or "parked" on the pavement when the other truck tried to pass it on the left from the rear. The plaintiff and the two men in the truck with him testified that they saw this Younger truck stopped or parked on the pavement on its side of the road with its rear left wheel slightly over the center line as they approached from the opposite direction on their right side of the road; that when they got within fifteen or twenty feet of this parked truck, the Naquin truck in the rear swerved to its left directly in front of them and in their traffic lane coming from the opposite direction, and plaintiff then pulled his truck to the right over on the shoulder and partly in the ditch to avoid the Naquin truck; that as the Naquin truck was opposite the parked or standing truck, the trailer of the former truck struck plaintiff's truck near the driver's seat causing the injuries heretofore mentioned.

Two other witnesses—Seay and Moore—testified that they saw the Younger truck and that it was parked or stopped on the highway before the accident. Against the positive testimony of these five witnesses on this point, the only witness who testified that the Younger truck was not completely stopped was the driver of this truck—Hebert—who said that he did not stop but merely cut off the gas and coasted or rolled along as he asked the lady if she wanted to ride to Houma. The only corroboration of the driver on this point was by a Mr. Duplantis who was some 250 feet in the rear of the trucks riding a horse, and this witness says that if the Younger truck was parked it was not parked for long. In view of the fact that the testimony abundantly shows that visibility was very poor on the morning of the accident on account of the fog and mist—a visibility of around one hundred feet being indicated—we fail to see how the testimony of this witness can be of much corroboration of the driver on this point. Moreover, two highway policemen visited the scene of the accident thirty or forty minutes after it occurred, and they testified that they interrogated several of the eye-witnesses who stated that the Younger truck was parked on the pavement and had the right side of the highway blocked. One of the highway police said that Duplantis was one of the witnesses who made a statement to them

right after the accident that the Younger truck was parked.

█ As we think the statements made by the witnesses shortly after the accident to these policemen are relevant and significant we quote an extract from the testimony of one of the policemen: "We got a statement from the different people up there concerning the nature of the accident, and we filed charges against this Mr. Hebert, the driver of Mr. Younger's truck, and also the driver of the other truck. We filed charges against both of them."

█ We are convinced that the Younger truck came to a stop and blocked the west traffic lane completely, if it did not extend somewhat over the center line. The truck had a tarpaulin over it and this made it difficult for the driver of another car in front or in the rear to see very far beyond the truck along the road. This fact, coupled with the fact that visibility was poor and the road slippery, made driving on the road at this point more than ordinarily dangerous.

As it is conceded that plaintiff was guilty of no contributory negligence, and as the negligence of Bourg, the driver of the Naquin truck, is shown beyond question, there are two principal questions for decision in the case: (1) was the stopping of the Younger-Hebert truck on the highway and the blocking of the west lane of traffic in the manner stated above, negligence under the circumstances; (2) and if it was negligence, did such negligence contribute to the accident?

Rule 10 of Section 3 of Act 21 of 1932 (the act in force at the time of the accident) provides that the driver of a vehicle on the public roads before stopping or turning from a direct line shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal provided in the rule (extending the left hand downward for stopping) plainly visible to the driver of the other vehicle affected by the stop or other movement.

Rule 15 of the same section provides that no person shall park or "leave standing" any vehicle whether attended or unattended upon the paved or traveled portion of the road where it is practicable to park or "leave standing" such vehicle off of the paved portion of the road (and there was ample room on the right shoulder for

Hebert to have parked or stopped his truck completely off the pavement); and it is further provided in this rule that in no case shall a person leave a vehicle parked or standing, attended or unattended, on a highway, unless a clear and unobstructed width of at least fifteen feet on the main traveled portion of the highway is left open.

In the case of Boudreaux v. Iseringhausen, La.App., 177 So. 412, we held that it is negligence for a driver of a car on the highway to come to a stop in a traffic lane with a car approaching from the rear without giving some warning signals to the following car; and that it is negligence to stop a car on the highway without leaving at least fifteen feet of open space on the traveled portion of the road where there is ample space to stop or park on the shoulder.

In the case of Fuld v. Maryland Casualty Company, La.App., 178 So. 201, we held that the question of whether or not the failure of the front car to give a signal or warning when slowing down and coming to a gradual stop was the proximate cause of the accident is a question of fact to be determined from the circumstances of the case. And in that case, we found that the proximate cause of the accident was the negligence of Fuld in driving too fast behind the truck and in his failure to keep his car under control. The forward truck had gradually slowed down and come almost to a stop, if it did not stop in the road, but Fuld had been following the truck for some time, the day was clear, and there was nothing to prevent him from seeing the gradual slowing down of the truck ahead of him.

█ In the Fuld case we quoted from Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, Volume 2 page 71, § 931, to the effect that the relative duties of the drivers of two cars going in the same direction on a country road are to be governed somewhat by the circumstances of each case. The driver of a front car owes no other duty to the car in the rear except to use the road in the usual way, in keeping with the laws of the road, and, until the driver of the front car has been made aware of the presence of the rear car by a signal or otherwise, he has a right to assume that if there is a car in his rear, such car will use the road in a proper manner, and not interfere with his use of the road in a lawful manner. And, in the absence of facts and circumstances to put the driver of the front car on notice of the approaching car, he may start or stop at will.

And in the same volume of Blashfield at page 332, § 1197, it is said that the words "to park" or "to stop" in a statute prohibiting the parking of cars in the highway mean something more than a mere temporary or momentary stoppage on the road for a necessary purpose. Among the illustrations of this rule given in the text is stopping momentarily to permit a person to board the vehicle, citing the American Company of Arkansas v. Baker, 187 Ark. 492, 60 S.W.2d 572, as authority for the statement.

█ We have no fault to find with this statement of the law, but, after all, the wording of the statute, the length of the stop, the condition of traffic, and the circumstances surrounding the particular accident must be taken into consideration. In this State, we have a statute in rule 10 of Section 3 of said Act 21 of 1932 which specifically prohibits such stopping on the highway without some signal or warning where another vehicle might be affected by such stopping. And, as already stated, traffic conditions were more than usually dangerous at this point on account of the heavy fog, the slippery condition of the road and the fact that traffic was moving in both directions, and, moreover, we think that the Younger truck had been stopped or "standing" blocking one traffic lane for a sufficient time to come within the prohibition of rule 15 of Section 3 of said Act 21 of 1932, which as already stated, prohibits a motorist from parking or leaving his car standing on the traveled portion of the road without any warning signals and without leaving the clear space on the road for other cars to pass as required by the statute. We therefore conclude that Hebert was negligent.

█ The other question is whether this negligence of Hebert was a contributing cause of the accident. Of course, one of the proximate and efficient causes of the accident, and perhaps the greater cause, was the negligence of the driver of the Naquin truck in driving too fast under the circumstances and in his failure to have his car under control when he attempted to pass the parked or standing Younger truck on the left in the face of plaintiff's oncoming truck. It is needless to indulge

in a discussion of the different degrees of negligence on the part of the driver of the Naquin truck coming from the rear and that of the driver of the Younger truck stopped in the road blocking one lane of traffic. Suffice it to say that Younger and the driver of his truck are liable in solido with the driver of the other truck, if the negligence of the driver of the Younger truck contributed to the accident, even though his negligence was not as gross as that of the driver of the other truck. As we stated in the case of Inman v. Silver Fleet of Memphis et al., La.App., 175 So. 436, we have no doctrine of comparative negligence in this State, although the Civil Code, Article 3556, paragraph 13, divides fault into three degrees; the gross, the slight and the very slight.

■ We are fully aware of the apparent injustice of holding one of the joint tort feasors, guilty of the lesser degree of negligence, liable for the whole damage, and, through an unwillingness of the injured person to prosecute his claim against the other, or for some other cause, permitting the one guilty of the highest degree of fault to go without any liability whatever. But such seems to be the law of this State, and we are powerless to change it if we were inclined to do so.

■ If the negligence of the drivers of the two trucks in this case combined to bring about the accident, a third person, without fault, as plaintiff was in this case, has a right to collect his full damage from any or all the defendants. We are forced to the conclusion that the combined negligence of the drivers of both trucks brought about the accident—that of Hebert in creating an unlawful obstruction in the road thereby blocking traffic without giving the proper signals, and that of Bourg in driving into this hazard at too fast a speed and in failing to have his car under control. Where a defendant is responsible for one of two or more proximate causes of an injury, he cannot escape liability because a third person is responsible for a concurrent proximate cause. Allen v. Louisiana Creamery, Inc. et al., La.App., 184 So. 395; Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, Volume 4, pages 360 and 361, §§ 2551 and 2552. We therefore conclude that defendants, Younger and Hebert, are liable.

■ Plaintiff is a young man, twenty nine years of age. He is married and has one child. His education is elementary, and was doing mostly manual labor at the time of the accident, earning around $18 per week. His left arm was badly mangled and had to be amputated shortly after the accident. Plaintiff stayed in the hospital for about ten days and then went home but visited the doctor for treatment of his arm for a month or more. He had a cut over his eye, but this seems to have healed, leaving only a slight scar. The stump of his amputated arm gave him some pain and was still sensitive at the time of the trial. He lost considerable blood and suffered severe pain for some time after the accident, but, according to his doctor, his wounds are practically healed.

Undoubtedly, the greatest item of damage suffered by the plaintiff is the loss of his arm and the consequent loss of earning capacity. However, we do not think that his earning capacity has been totally and permanently impaired, but only reduced. There are many things that a person with only one arm can do, even though he has only a moderate education. If plaintiff were to draw compensation for the loss of his arm, he would be entitled to an amount from two thousand to twenty five hundred dollars. However, we do not mean to estimate his loss by using the compensation law as a rule, but only refer to it as a kind of guide. We think for the loss of his arm, the other injuries, pain and suffering, and loss of earning capacity, a total award of $5,000 would be fair and reasonable. And, of course, in addition to this amount, plaintiff is entitled to recover doctor and hospital bills and medical expenses. All of these are shown to be $311.40.

For the reasons assigned, it is ordered that the judgment appealed from be reversed, annulled and set aside, and it is now ordered, adjudged and decreed that plaintiff have and recover judgment of the defendants, Robert J. Younger and Abbie Hebert, in solido, in the full sum of $5,311.-40, with legal interest thereon from judicial demand, and for all cost in both courts.