This suit results from a rather strange accident in which four automobiles were involved. At about 7:15 o'clock on the morning of September 15, 1944, Jacques Jarreau was driving his Buick automobile in Canal Street towards the Mississippi River. He was near to the neutral ground and, just after he crossed the intersection at Claiborne Avenue, he noticed that a Ford car, which was in the roadway ahead of him, was about to come to a stop. The driver of the Ford, Morton Meredith, did not reside in New Orleans and was not thoroughly familiar with the streets in that neighborhood. He desired to turn across the neutral ground on Canal Street in a downtown direction, as he wished to go to the Monteleone Hotel, and thought that by using some other street than Canal, he could avoid the traffic congestion usually found on that thoroughfare near the business center of the city.
The first cross street on the riverside of Claiborne Avenue is North Robertson, but between that street and Claiborne Avenue there is an auxiliary crossing of the neutral ground, by means of which crossing vehicles may pass from one side of the street to the other. Had Meredith used this auxiliary crossing, he would have had to go back to Claiborne Avenue by means of the lower side of Canal Street, since that auxiliary crossing does not lead directly to any cross street. As he was passing this crossing, he obviously did not fully understand the situation and was not certain whether he could use it in his desire to get off Canal Street. In his indecision he paused just after passing this crossing and stopped just before reaching the crossing at North Robertson. Jarreau was following *Page 701 
him in his Buick. As Meredith stopped, Jarreau came to a stop also. There is a dispute — and it is one of the principal issues of the case — as to whether the Buick struck the Ford.
Behind Jarreau there was a third automobile driven by a Mr. Ganci. Ganci stopped his car.
On the upper side of Canal Street there was a taxicab of defendant partnership, Toye Brothers Yellow Cab Company. This cab was operated by Vincent Serio. He had stopped at a filling station and had just driven from that station back to the street as the three already mentioned cars passed. Serio drove almost across the upper roadway of Canal Street and had just turned to his right, along the neutral ground, as the other three cars, one behind the other, came to a stop. The taxicab crashed into the Ganci car; it was pushed into the Jarreau car and the Jarreau car, in turn, was pushed into the Meredith car.
Jarreau had secured from Alliance Assurance Company, Ltd., a policy of collision insurance under which that company had agreed that, should his car be damaged in collision, it would pay such amount above $50 as the repairs might cost. In other words, it was what is known as a collision insurance policy with a $50 deductible clause.
The repairs to the Jarreau car cost $141. Jarreau himself paid $50 thereof; the Alliance Assurance Company, Ltd., paid the balance, $91, and secured from Jarreau a subrogation pro tanto to his right against the tort-feasor. Jarreau and the said Alliance Assurance Company, Ltd., then brought this suit against the Toye Brothers Yellow Cab Company, a partnership, and the individual members thereof, Frank E. Toye, George A. Toye, Joseph Toye and Paul W. Toye; and also against Vincent Serio, the driver of the taxicab.
Plaintiffs allege that the entire damage to the Jarreau car was caused by Serio, the driver of the Yellow Cab, and that the Jarreau car did not crash into the Ford of Meredith until the Yellow Cab commenced the series of crashes by first crashing into the Ganci car, knocking it into the Jarreau car, and knocking that car, in turn, into the Meredith car. The contention of the defendants is that the damage to the Jarreau car was caused principally by the fact that, when the Meredith car was brought to a stop, Jarreau permitted his car to crash into the rear of the Meredith car before the Yellow Cab became involved at all.
The matter went to trial below and there was judgment in favor of the plaintiffs as prayed for. The Toye Brothers Yellow Cab Company and the individual members of that partnership appealed suspensively and the matter is now before us.
[1, 2] We find it difficult to understand from the record how it could have been held that the Jarreau car was brought to a stop without crashing into the Meredith car, as the evidence which is in the record overwhelmingly demonstrates that it not only crashed into the Meredith car, but that that collision was considerably more serious than was the later one caused by Serio's permitting the Yellow Cab to crash into the Ganci car. Plaintiff Jarreau is the only witness who testified that his car was brought to a stop without crashing into the Meredith car. Meredith, without equivocation, states that when he brought his car to a stop, the Jarreau car crashed into the rear of his Ford and that later the other series of collisions or crashes took place. Serio, the driver of the taxicab, testified to the same effect; in other words, that there had already been an earlier crash between other automobiles when the Yellow Cab driven by him hit the rear, or Ganci car. The only other witness who testified was a Mr. Phelps who was walking across the street as the automobiles approached. He said that, as he was crossing the street, he stepped back out of the way for a Ford car to go by and that at about the time it went by there was another car coming, a Buick; that this Buick hit the Ford and about a second or two after that he heard another crash and a second or so later still another.
We are well convinced from this record that Jarreau's car crashed into the rear of the Ford car and that a substantial part of the damage was caused by that collision. Jarreau is unable to saw how much of the damage was caused by that collision and how much additional damage was caused when the Yellow Cab crashed into the Ganci car. We say that we think the greater part of the damage was caused by the first collision because Meredith, who was entirely without interest in the matter, says that the first collision was considerably *Page 702 
more serious than the following ones. We quote from his testimony:
"Q. With relation to the relative force of the various blows that were struck, the Jarreau car was the first car to strike your automobile, was it not? A. Yes, sir.
"Q. Was that a very severe blow or was it a mild blow? A. Pretty severe.
"Q. And the blow that was struck when the Ganci automobile struck the Jarreau automobile and naturally the Jarreau automobile bumped your car, what was the nature of that blow? A. Well, it wasn't as hard.
"Q. And the nature of the blow that was struck by the Yellow cab, that is, the shock that was sustained by your automobile when the Yellow cab struck the Ganci automobile, forcing the Ganci automobile into the Jarreau automobile, and then striking your car, what was the nature of that blow? A. That was less severe, still.
"Q. Less severe still? A. Yes, sir."
In view of the failure of plaintiff to prove just what damage was caused by the negligence of Serio, the operator of the Yellow Cab, he cannot be permitted to recover for that damage. It may be that some of the damage was caused by that negligent act of Serio, but the burden of proof was on the plaintiff to distinguish between the damage already caused by his own negligence and the additional damage which may have been caused by the negligence of Serio. He has totally failed to offer this proof.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed insofar as it is against Toye Brothers Yellow Cab Company and the individual members thereof, and that as to them it be dismissed at the cost of plaintiff.
Reversed.
WESTERFIELD, J., absent. Takes no part. *Page 814