William H. HUGHES et al.,
Appellants,

v.

GREAT AMERICAN INDEMNITY
COMPANY, Appellee.

No. 16026.

United States Court of Appeals
Fifth Circuit.

Aug. 10, 1956.

Rehearing Denied Sept. 14, 1956.

Wm. J. Fleniken, Brown & Fleniken, Shreveport, La., for appellants.

Donald L. Baker, Shreveport, La., Kent Breard, Monroe, La., Morgan, Baker & Skeels, Shreveport, La., McHenry, Lamkin, Snellings & Breard, Monroe, La., for defendant-appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This is an appeal from a judgment in the District Court rendered pursuant to a jury verdict in favor of appellee Great American Indemnity Company, insurer of the automobile of William M. House, who drove his car into the back of the stopped car occupied by William H. Hughes and his family, the appellants.[1] About three minutes before that accident the Hughes car had been in head-on collision with the car of one Murray, and both cars were standing in the road when House drove his car into the rear of the Hughes car. The Court below charged the jury that it would be authorized to apply the doctrine of sudden emergency in determining whether House was negligent.

Appellants contend that it was error so to charge the jury based upon their theory that the evidence revealed no exceptional circumstances warranting application of the doctrine of sudden emergency. Appellants further contend that the Court below erred in refusing their requested instructions to the effect that appellee would be liable in solido for all damages along with Murray's insurer on the contention that Murray and House were joint tort feasors.

According to the facts largely developed by pretrial stipulation, Hughes was driving his family south, in the late afternoon of December 2, 1953, in the proper lane on Louisiana Highway No. 8. Soon after Hughes entered the highway, Murray, traveling north on the same highway, and attempting to pass a truck drove his car head-on into the Hughes automobile. The terrific impact dazed, in varying degrees, the occupants of the Hughes car and, while they were still in this condition, House, driving south and failing to see the two automobiles in time, drove into the rear of the Hughes car at a time when House states he was moving "not over twenty miles per hour."

The Hughes filed this action against Murray's insurer and against appellee, insurer of House. The complaint sought judgment against both insurance companies in solido alleging that the injuries were the result of the joint, concurrent and successive negligence of the two insureds. In October, 1955 Murray's insurer paid the Hughes $15,000 in compromise settlement of the claims against Murray and the action was dismissed as to his insurer, reserving all rights against appellee.

The first error argued by appellants is directed against the charge of the Court below submitting to the jury the question of whether House and his insurer should be exculpated from liability under the doctrine of sudden emergency, appellants contending that there was no evidence tending to sustain this defense. House testified that he had just met an oncoming car while in a curve,—the point of which was stipulated to be six hundred feet south of the place of accident,—whose bright lights "kind of bothered" him, whereupon he dimmed his lights and kept them so until he struck the Hughes car. When he passed the car with the bright lights his speed was forty miles per hour and he proceeded at that speed or less until he suddenly came upon the Hughes car still locked with the Murray car. He testified further that, upon seeing the Hughes car, he immediately applied his brakes, causing his car to skid on the wet road. He was unable to estimate how far his car

---

[1]. In the Hughes car were William H. Hughes and his wife, Mrs. Ozzello P. Hughes, together with their two daughters, Mary Louise and Virginia Sue. Each of these parties received injuries, some of which were of a very serious and permanent nature. (There were three other children in the car who were not injured and are not parties to the action.)

skidded. He stated that the wrecked Murray automobile was of a faded blue color and the Hughes automobile of a faded dark green which caused the mass not to be easily visible in the mist of rain.

The Court below delivered to the jury a careful charge about whose language no serious question is raised, setting forth the ingredients of the doctrine of sudden emergency as developed under Louisiana law.[2] The portion of the charge quoted in the note was supplemented by a careful spelling out of the duty of a motorist to maintain a careful and proper lookout, to maintain a rate of speed no greater than would permit him to stop or control the car to avoid striking objects in the road, which speed must be reduced where vision is obstructed by weather conditions or other causes.

■ Appellant urges with considerable force that House was confronted, not with an emergency, but with an ordinary traffic hazard such as motorists are called upon to face whenever they use the roads. The case is a close one, but we have concluded that, under the evidence, a jury question was presented as to whether House, under the emergency created by those conditions, operated his automobile as a reasonably prudent person would under the same circumstances.

■ We are not unmindful that, under the law of Louisiana, it was the duty of House to operate his car at a rate of speed that would give him control of it within the range of vision furnished by his headlights, under the circumstances prevailing at the time; and that failure so to do would constitute negligence. But we have had occasion to examine the Louisiana law on the subject of action in emergencies in the recent case of Western Production Co. v. Yarbrough, 5 Cir., 234 F.2d 889, in which we concluded that there was a disposition of the Louisiana Courts to apply that rule as flexible and to leave to the jury to decide what was reasonable under the circumstances of each case. We considered the recent Louisiana cases and the decisions of this Court[3] and held that it was proper, under facts not unlike those here present, to submit the question of emergency to the jury for decision.[4]

We have reached the same conclusion here. " 'The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury' "[5]

---

2. These portions of the charge will suffice to demonstrate that the question was fairly presented to the jury: "Of course, if a driver's vision is suddenly and unexpectedly obscured, or if he is temporarily blinded through causes which he, as a reasonable, prudent person could not have anticipated, or there are other exceptional circumstances which he reasonably could not have foreseen, he is not held to the same high degree of care but may be said to have been placed in an emergency * * * In such circumstances he may not be said to be guilty of negligence if he makes such a choice as a person of ordinary prudence would have made even though he did not make the wisest choice and one which would have been required in the exercise of ordinary care but for the emergency. * * *"

3. New Amsterdam Casualty Co. v. Ledoux, 5 Cir., 1947, 159 F.2d 905; Car and General Insurance Corp. v. Cheshire, 5 Cir., 1947, 159 F.2d 985; Great American Indemnity Co. v. Cormier, 5 Cir., 1951, 187 F.2d 107; Atkins v. Halliburton Oil Well Cementing Co., 5 Cir., 1952, 196 F.2d 876; Hicks v. Tilquit, La.App., 1955, 82 So.2d 100.

4. We refer to the Yarbrough case for a full discussion of the Louisiana law on the subject, which law is controlling in the case before us.

5. Lowry v. Seaboard Airline Railroad Co.,

Nor are we able to agree with appellants in their argument that they are entitled to recover from appellee all of the damages sustained by appellants under the established rule that recovery *in solido* is permitted as against joint tort feasors. We have recognized such to be the law where an accident results from the combined negligence of two or more persons:

> "It is the law in Louisiana that, where two persons are negligent and their combined negligence contributes to and brings about an accident, they are what are known as joint tort feasors or joint wrongdoers. Such tort feasors or wrongdoers are liable *in solido*."[6]

The Court below manifestly started out with the assumption that this rule should be applied to this case.[7] But just before the trial was begun, under the teaching of Jarreau v. Toye Bros. Yellow Cab Co., La.App.1946, 24 So.2d 700, it announced its intention of submitting to the jury the right to award damages to appellants for injuries demonstrated by the evidence to arise from appellee's action in driving into the Hughes car and no more;[8] and the trial Court refused a large number of instructions requested in writing by appellants based upon the theory that appellants were entitled to recover from appellee all damages sustained by them.

In our opinion, the charges given by the Court below were justified and its action in refusing those requested by appellants was correct. Appellants have assembled a large number of cases from other jurisdictions from which they attempt to develop the thesis which in turn they contend to be the law in Louisiana that recovery *in solido* is permitted against two persons whose negligence causes injury even though their negligent acts are definitely separated and though proof is lacking of joint or concurrent negligence. We do not think appellants' position is sound as applied to the facts of this case. Appellants had received serious injuries in the much heavier impact which took place between their car and the Murray car.

At that time [9] House was more than a mile away from the two wrecked cars. That episode was *fait accompli* and the injuries produced by it had actually been sustained. No act or omission of House had any influence, direct or indirect, on inflicting those injuries. It appears from credible evidence in the record, however, that the House car caused further damages to the Hughes car and new injuries or aggravation of those already inflicted, to its occupants.[10] If these

---

5 Cir., 1948, 171 F.2d 625, 630, quoting from the Supreme Court case of Grand Trunk Railway Co. of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L. Ed. 485.

6. The quotation is from Note 3 of our decision in Banks v. Associated Indemnity Corp., and companion case, 5 Cir., 1947, 161 F.2d 305, 308. And the same rule is announced in Falgout v. Younger, La. App.1939, 192 So. 706; and Abrego v. Tri-State Transit Co., La.App.1945, 22 So.2d 681.

7. Being led to that conclusion apparently by our decisions in Phillips Petroleum Co. v. Hardee, 5 Cir., 1951, 189 F.2d 205, and by the Louisiana cases of Falgout v. Younger, supra; Rhea v. Daigle, 17 Jud. D.Ct., Terrebonne Parish, La., amended and affirmed, La.App., 72 So.2d 643, and Abrego v. Tri-State Transit Co., supra.

8. This excerpt from the charge as given illustrates the manner of the submission of this question to the jury: "If you find that he was guilty of any one or more of such acts of negligence which proximately or directly caused or aggravated the injuries of the plaintiffs you may find for the plaintiffs to the extent that they were so injured but no more."

9. The complaint charges that about three minutes elapsed between the two accidents and the proof tends to sustain this.

10. For example, the evidence showed that the Hughes baby, the most seriously injured of the group, was still in her mother's lap after the first collision. She was thrown to the floor by the lick delivered by the House car and the jury could determine that all, or a considerable part, of her injuries were the product of that impact.

damages and injuries were the result of the negligence of House, appellants would be entitled to recover.

█ Appellants argue that it would be impossible under circumstances such as those prevailing in this case to make proof which would segregate the injuries attributable to the separate blows. Even if this were so, the difficulty of making proof would not change the principle of law involved. But we do not think that this is true. Damages do not have to be established with mathematical certainty so long as there is evidence that damages did probably ensue from the second collision and so long as a reasonable basis is established for recovery of those damages. What the Supreme Court recently said [11] in discussing the allied subject of negligence points to the rule which should be followed in such a situation: "In considering the scope of the issues entrusted to juries in cases like this, it must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. * * * Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. '(W)e think these are questions for the jury to determine. * * *' * * * Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."

Being of the opinion that the Court below did not commit error in the respects argued, its judgment is

Affirmed.

CAMERON, Circuit Judge (dissenting).

I am unable to join the majority in affirming the judgment in this case because I think the jury was probably led to its verdict by the submission to it of the question of whether House was protected by the principles of law governing action in an emergency. Under House's own testimony there was nothing which the law recognizes as an emergency.

House was driving south towards his home at Shreveport, and rounded a sweeping curve as he entered Oil City on a road with which he was thoroughly familiar. While in that curve he met a car whose lights had not been dimmed. House does not claim that the lights were in any way abnormal, but he stated only that the lights "kind of bothered me." He then looked at his speedometer and he was making forty miles an hour and he slowed down to some extent before he ran into the Hughes car.[1]

He had completely passed the car with the bright lights before entering the straightaway along which the business houses and residences of Oil City were situated. That straightaway was six hundred feet long to the point of the accident. His lights were good and were dimmed by his own action and choice and his brakes were in first class condition. It was misting rain, and the road was wet.

House admitted that he knew he was entering a congested community and the evidence shows that, in the vicinity, were an oil field supply store, a cafe, two ice houses, one or more grocery stores and a motel. The Hughes car and the Murray car were interlocked and were almost entirely on the side of the highway House was traversing. They were situated opposite the entrance of a motel and quite close to the intersection of the

11. Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 525–526, 76 S.Ct. 608, 610.

1. He admitted that his speed was about twenty miles an hour at the time of the impact. He drove the two interlocked cars three to four feet and did damage to his own front end costing $711.00 to repair.

highway with what appears from the photographs to be a main street of the town.

All of these facts were known to House and the law charged him with the duty to drive his car in obedience to the dictates of prudence arising from those facts. One of the fixed facts of the situation was the presence of these two automobiles in his lane of the highway. They were there when he came around the curve. They did not dart or appear suddenly in front of him. They created no more of an emergency than would have been created if a group of children had been crossing the highway to the motel or traveling from the ice cream store the photographs show to be nearby. The witness Elder was actually standing in the road alongside the Hughes car. House would have run into any person or any object situated as was the Hughes car, and the majority opinion absolves him from liability under the emergency doctrine.

Such is, in my opinion, not the law. House was a very experienced driver. He knew how far his lights showed the way in the misting rain. He knew that pedestrians or cars would be likely to be using the road in front of him as they had a right to do. The law required him to anticipate the presence of persons and objects in the road and to accommodate his speed and car control to the known weather, traffic and road conditions, to his ability to see as well as to his own state of excitement or "bother."

The emergency doctrine depends upon the unusual, the sudden, the unexpected, —of such degree as to stun the average man, to blunt his reactions, to rob him momentarily of his ability to think and judge accurately. Does the "bother" of meeting a car with normal headlights qualify under that test and is the spell to be recognized as continuing for ten seconds and six hundred feet? Do misting rain and wet roads and objects in the road qualify? Not under the law of emergency as I understand it.

The Supreme Court of Louisiana has spoken on the subject in its most recent case and has refused to apply the emergency doctrine under facts much more favorable to the driver of the vehicle doing the damage than those here. Geoghegan v. Greyhound Corp., 1954, 226 La. 405, 76 So.2d 412,[2] 413. Greyhound's bus had killed several head of cattle belonging to Geoghegan. It was being operated in a misting rain upon wet pavement at about forty-five miles per hour when it met a car and each driver dimmed his headlights. Immediately after passing that car and raising his headlights the bus driver was confronted with the several cattle which "evidently * * * came in from behind the oncoming car." The trial Court had held Greyhound liable, but the Court of Appeals reversed on the ground that "the driver was confronted with a sudden emergency and did everything to avoid the accident." The Supreme Court of Louisiana did not agree. It differentiated its former holding in Anderson v. Bendily, La.App., 66 So.2d 355, with this statement: "The holding * * * is not applicable * * * because all of those cases involve circumstances where animals suddenly darted in front of an automobile operated at a reasonable rate of speed. In the present case the animals walked or 'stalked' onto the highway and did not suddenly dart in front of a bus."

The general rule governing such accidents in Louisiana was thus stated, 76 So.2d 413:

"'A motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision.' * * * It is negligence to drive an automobile at a greater rate of speed than is prudent under the circumstances. * * *

2.  Reversing same case, La.App. 1st Cir., 1954, 71 So.2d 642, 644.

"The operation of the bus at the rate of 45 miles per hour under the weather conditions was not the use of ordinary care and prudence and had the driver been operating the bus at a reasonable rate of speed he would have had time to avoid running into the cattle. The surface of the road was wet and his vision was restricted. Under such circumstances he should have operated the bus at a rate of speed that would give him control of his car in event that just such a condition, as he was confronted with, arose. Therefore, the result of the accident was due to his negligence."

This last word of the highest court in Louisiana fits the situation before us perfectly, and establishes a rule which adjudges negligence under circumstances of emergency much plainer than those facing House. He had six hundred feet in which to raise his lights if needed or to discover an object much larger than cows, while Greyhound had no appreciable distance for action. He was approaching a congested community, while such an added burden did not apply in Greyhound's case. The majority decision is, in my opinion, unjustified in the light of this rule so lately stated as the law in Louisiana, and I do not find any element of supposed emergency here which was not present there.

What we said in Geigy Chemical Corp. v. Allen, 5 Cir., 1955, 224 F.2d 110, applies here. We held that a motorist was guilty of negligence as a matter of law under circumstances more favorable to him than those here:

"The large and easily visible truck was certainly occupying Appellee's half of the road as he approached the point of collision * * *.

"If Appellee was blinded so that he could not see up the road towards the truck, it was his duty to bring his car immediately to a stop until the blinding glare should be removed, or at least to bring it under such control that he and those who might be beyond the blaring light would be protected. * * *

"The preservation of life and property demands that every motorist stop his car when he cannot see where its motion is leading him. If the mass which loomed up before the unseeing eyes of Appellee had been a group of school children, the result would not have been different. The fact is, if a motorist is not to be counted negligent when he meets a car having normal lights and operated in the usual manner, and moves nonchalantly into an area where the road ahead is completely hidden from his view, and does nothing at all to protect those who may be in the hidden area, our roads will become places of potential carnage every time two motor cars meet in the nighttime. * * * It is clear to us that this collision was caused by failure of Appellee to look where the law required him to look, or to see what the law required him to see, or to keep his car under such control that he could stop it within the range of his vision." 224 F.2d at pages 113–114.

The fact that Louisiana gives some elasticity to the rule as stated in these two cases does not mean that the rule is destroyed or that it does not apply in all of its force where the facts undisputedly show that there are no unusual circumstances such as the law recognizes as creating an emergency. The negligence of House was much more palpable than that of the drivers in the Geoghegan and the Geigy cases, and he was, in my opinion, guilty of negligence as a matter of law and his insurer ought not to be rescued from the obligation to pay these very badly injured people by the emergency doctrine. For the reasons stated I think the judgment should be reversed and the case remanded for another trial.

Rehearing denied: CAMERON, Circuit Judge, dissenting.